UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re: | Chapter 7 |
| Gerald M. Peguese, | Case No. 09-59057 |
| Debtor. | Hon. Phillip J. Shefferly |
| _____/ | |
| Andrew Calcaterra, De-Terra, L.L.C., Randall DeBeul, and A.R. Investment Group, L.L.C., | Adversary Proceeding No. 09-06102-PJS |
| Plaintiffs, | |
| v. | |
| Gerald M. Peguese, | |
| Defendant. | |
| _____/ | |

### ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER INVALIDATING DEFENDANT'S CLAIM OF PRIVILEGE

The Plaintiffs filed this adversary proceeding seeking relief under § 523 and § 727 of the Bankruptcy Code. On September 20, 2010, the Court entered an order granting the Plaintiffs' motion to compel the Defendant to produce documents (docket entry no. 72). Pursuant to the order, the Defendant began to produce documents on October 4, 2010, accompanied by a privilege log. The privilege log asserted an attorney-client privilege with respect to some documents and an accountant-client privilege with respect to other documents that the Defendant withheld from the production. On February 18, 2011, the Plaintiffs filed a motion for an *in camera* review and for other relief with respect to the withheld documents (docket entry no. 124) ("Plaintiffs' Motion").

The Plaintiffs' Motion alleges that Plaintiffs' counsel contacted the Defendant's counsel in late January, 2011 to discuss the documents withheld by the Defendant pursuant to the privilege log, and then followed up by letter on February 10, 2011, and by email on February 14, 2011, regarding various issues pertaining to the documents withheld by the Defendant and the privilege log that the Defendant had provided. The Plaintiffs' Motion identifies a number of outstanding issues between the Plaintiffs and the Defendant with respect to the documents and the privilege log, but also states that the parties were working to resolve, or at least narrow, the outstanding issues between them. The Plaintiffs' Motion ultimately requests that the Court conduct an *in camera* review of various documents and determine that such documents are not protected by the privileges asserted by the Defendant.

On February 18, 2011, the Plaintiffs also filed an ex parte motion requesting the Court to set an expedited hearing on the Plaintiffs' Motion because the deadline of February 28, 2011 for completion of discovery in this adversary proceeding was soon approaching. Also on the same day, the Plaintiffs filed an ex parte motion requesting permission to file a supplemental brief under seal pursuant to this Court's ECF Procedure 9(b). The Court granted both the Plaintiffs' motion for expedited hearing and the Plaintiffs' motion for permission to file a supplemental brief under seal. The Defendant then requested permission to file a response under seal, and the Court granted that request.

On March 2, 2011, the Court held a hearing on the Plaintiffs' Motion. At the beginning of the hearing, the attorneys for the Plaintiffs and the Defendant informed the Court that they had resolved all of the issues raised by the Plaintiffs' Motion, except for one. Specifically, the Plaintiffs and the Defendant did not agree with respect to the Defendant's assertion that the attorney-client

privilege applies to a certain email (the "Disputed Email") dated June 17, 2008 sent by Marty Fried, the Defendant's bankruptcy attorney, to the Defendant, Gerald Peguese, with a copy to Dave Wellman, another attorney. The Disputed Email had been produced by the Defendant to the Plaintiffs in the production of documents on October 4, 2010, but was also identified in the Defendant's privilege log as being subject to the attorney-client privilege. Although all other issues raised by Plaintiffs' Motion were resolved, the Plaintiffs and the Defendant requested that the Court rule on their disagreement regarding the Disputed Email. At the conclusion of the hearing, the Court took the matter under advisement.

In their brief and in their oral argument at the hearing on March 2, 2011, the Plaintiffs make three arguments regarding the Disputed Email. First, the Plaintiffs argue that the attorney-client privilege does not apply to the Disputed Email at all because Fried sent a copy of the Disputed Email to Wellman. According to the Plaintiffs, although Wellman is an attorney, he was not the Defendant's attorney in his bankruptcy case, but was simply a third person. Because the Disputed Email was sent to a third person, the Plaintiffs argue that it is not subject to the attorney-client privilege between Fried and the Defendant, because the attorney-client privilege only protects confidential communications between an attorney and his client, and does not extend to communications that are also made to third persons. In response, the Defendant concedes that Wellman did not represent him in his bankruptcy case, but argues nonetheless that Wellman is his personal attorney. In support, the Defendant attaches a copy of excerpts of a transcript of a deposition of Wellman in which he describes his representation of the Defendant in a number of matters. In addition, the Defendant points out that Wellman was the attorney who referred the Defendant to Fried for representation in his bankruptcy case.

-3-

After reviewing the transcript of Wellman's deposition, the Court concludes that Wellman was both an attorney for and agent of the Defendant. The fact that Fried, the Defendant's bankruptcy attorney, sent a copy of the Disputed Email to Wellman, the Defendant's personal attorney, does not destroy the confidential nature of the communication and does not take it outside of the attorney-client privilege. Privileged communications "can include communications between a client or a client's representative and a lawyer or the lawyer's representative as long as the other conditions for attorney-client privilege are fulfilled." John Labatt Ltd. v. Molson Breweries, 898 F. Supp. 471, 474 (E.D. Mich. 1995); see also Reed v. Baxter, 134 F.3d 351, 358 (6th Cir. 1998) (dissent) ("It is well settled that agents of a client are covered by the attorney-client privilege to the same extent as the client."). Therefore, the Court rejects the Plaintiffs' contention that the attorney-client privilege does not apply to the Disputed Email.

The Plaintiffs next argue that even if the attorney-client privilege might otherwise attach to the Disputed Email, the crime-fraud exception to the attorney-client privilege applies in this case to the Disputed Email. "A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud." United States v. Collis, 128 F.3d 313, 321 (6th Cir. 1997). In the Sixth Circuit, "the test of a claiming the crime fraud exception is two-fold: First, [a party] must make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, [a party] must establish some relationship between the communication at issue and the *prima facie* violation." Rainer v. Union Carbide Corp., 402 F.3d 608, 625 (6th Cir. 2005) (quotations marks and citations omitted).

Here, the Plaintiffs argue that the Disputed Email references a number of transactions and assets that are not disclosed in the Defendant's bankruptcy case. According to the Plaintiffs, even

if Fried may not have known that the Defendant intended to use the advice provided to him in the Disputed Email without properly accounting for the transactions and assets described in his bankruptcy case, the crime-fraud exception would still apply if the Defendant used the advice provided to him to commit a fraud or a crime. The Defendant responds by arguing that the crime-fraud exception does not apply to the Disputed Email because the Plaintiffs have failed to show that there is a reasonable basis to suspect the perpetration, or attempted perpetration, of a crime or fraud, and have failed to show that the communications contained in the Disputed Email were in furtherance of the perpetration or attempted perpetration of a crime or fraud.

The Court agrees with the Defendant. The Plaintiffs have not made a sufficient *prima facie* showing that there is a reasonable basis to suspect perpetration or attempted perpetration of a crime or fraud, or that the communications contained in the Disputed Email were in furtherance of the perpetration or attempted perpetration of a crime or fraud. The identification of assets and transactions in the Disputed Email that were not listed in the Debtor's bankruptcy case that was filed a year later on June 17, 2009, is not by itself sufficient to make a *prima facie* showing to invoke the crime-fraud exception. Therefore, the Court denies the Plaintiffs' assertion that the crime-fraud exception applies to the Disputed Email.

Finally, the Plaintiffs argue that even if the Disputed Email is subject to the attorney-client privilege, and even if the crime-fraud exception does not apply, the Defendant in this case has waived the right to assert the attorney-client privilege by producing the Disputed Email with the production of documents on October 4, 2010. In making this argument, the Plaintiffs concede that the Disputed Email was inadvertently disclosed when it was produced with the October 4, 2010 production of documents. However, the Plaintiffs argue that even though it was inadvertently

-5-

09-06102-pjs    Doc 148    Filed 03/17/11    Entered 03/17/11 15:18:37    Page 5 of 10

disclosed, the disclosure still constitutes a waiver of the attorney-client privilege because the Defendant did not comply with Fed. R. Evid. 502(b). Federal Rule of Evidence 502(b), which became effective on September 19, 2008, states that a disclosure of a communication or information covered by the attorney-client privilege

> does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

The Defendant argues that the disclosure of the Disputed Email was obviously made inadvertently in the October 4, 2010 production of documents, since the Defendant's privilege log specifically identifies the Disputed Email as privileged. Further, the Defendant attaches to its brief an affidavit of Patrick M. Rodda, who is the owner of Sure Shot Computer Services LLC. Rodda's affidavit explains that his company was engaged by the Defendant's attorney to assist with the production of documents on October 4, 2010. Rodda explains in his affidavit that he provided technical assistance to the Defendant's attorney, including the downloading of a CD and the installation of a program to electronically organize the documents for production by the Defendant to the Plaintiffs. Rodda's affidavit also explains his role in searching for and identifying those documents that were asserted to be privileged and ensuring that they were not included with the documents produced by the Defendant to the Plaintiffs. Rodda's affidavit also explains how the Disputed Email was mistakenly included with the production of documents.

There is no disagreement that the Disputed Email was inadvertently disclosed. Further, there is no question in the Court's mind that the Defendant has shown that he took reasonable steps to prevent disclosure, as corroborated by Rodda's affidavit. The tough issue in this case is whether the Defendant meets the third requirement of Fed. R. Evid. 502(b)(3). Specifically, did the Defendant,

as the holder of the attorney-client privilege, promptly take reasonable steps to rectify the error of the inadvertent disclosure of the Disputed Email upon learning of it?

The Plaintiffs' attorney states that he first realized that the Disputed Email had been inadvertently disclosed with the October 4, 2010 production of documents "some time in late January, 2011." The Plaintiffs' attorney says that he called the Defendant's attorney to inform him of the disclosure of the Disputed Email during late January, 2011, and to discuss various other outstanding discovery issues between the Plaintiffs and the Defendant. The Plaintiffs' attorney next states that he sent a lengthy letter to the Defendant's attorney on February 10, 2011, and then sent a follow up email to him on February 14, 2011, each regarding the Disputed Email and various other outstanding discovery issues. According to the Plaintiffs, despite the Plaintiffs' attorney's telephone call, letter and email, the Defendant took no steps at all to rectify the inadvertent disclosure of the Disputed Email in the October 4, 2010 production of documents. The Defendant's attorney replies that he does not recall having any conversations with the Plaintiffs' attorney in "late January" about the disclosure of the Disputed Email, and says that his first recollection of any communication from the Plaintiffs about this issue is the February 10, 2011 letter sent by the Plaintiffs' attorney. According to the Defendant's attorney, he then had a number of conversations with the Plaintiffs' attorney about the Disputed Email, and about addressing and trying to resolve various other outstanding discovery issues between the Plaintiffs and the Defendant. However, the Defendant's attorney does not state that he ever asked the Plaintiffs, either verbally or in writing, to return or destroy the Disputed Email. On February 18, 2011, the Plaintiffs filed the Plaintiffs' Motion seeking a ruling with respect to the Disputed Email, as well as the other outstanding discovery issues between the Plaintiffs and the Defendant.

In <u>Board of Trustees, Sheet Metal Workers' National Pension Fund v. Palladium Equity Partners, LLC</u>, 722 F. Supp. 2d 845 (E.D. Mich. 2010), the U.S. District Court for the Eastern District of Michigan noted that Fed. R. Evid. 502(b)

> was adopted in response to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information. This concern is especially troubling in cases involving electronic discovery.

<u>Id.</u> at 849 (quotation marks and citation omitted). The <u>Palladium</u> court noted that Fed .R. Evid. 502 does not contain any factors to assist in determining the application of Fed. R. Evid. 502(b), nor has the Sixth Circuit nor any other court of appeals addressed the list of factors for a trial court to consider in applying Fed. R. Evid. 502(b).

> The Explanatory Note to Rule 502 also states that although the rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake, the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently. For example, when a privileged document is used at a deposition, and the privilege holder fails to object immediately, courts have found the privilege to be waived. Of course, the burden of proving that disclosure was truly inadvertent lies with the party producing the document.

<u>Id.</u> at 850 (quotation marks and citations omitted).

As noted above, the Court is persuaded that the initial disclosure of the Disputed Email on October 4, 2010 was inadvertent, and that the Defendant did take reasonable steps to prevent its disclosure. Therefore, both of the requirements of Fed. R. Evid. 502(b)(1) and (2) are met. However, there is no evidence in the record from which the Court could conclude that the Defendant promptly took reasonable steps to rectify the error upon learning of it. Regardless of whether the Plaintiffs' attorney and the Defendant's attorney first spoke about the inadvertent disclosure of the

Disputed Email "in late January, 2011," as the Plaintiffs' attorney contends, or on February 10, 2011, as the Defendant's attorney contends, it does not appear that *any* steps to rectify the error were taken by the Defendant's attorney after learning of the inadvertent disclosure. There is nothing in the record to show that the Defendant made a demand, either in writing or verbally, upon the Plaintiff to either return the Disputed Email or destroy it. While both attorneys acknowledge that there were ongoing discussions between them regarding outstanding discovery issues in this case, including issues surrounding the Disputed Email, the Defendant has not identified a single step that he took to rectify the error upon learning of it, either in late January, 2011 or on or after February 10, 2011. Moreover, it was the Plaintiffs, and not the Defendant, who brought the matter before the Court as part of the various discovery disputes between the parties. The fact that the Defendant filed a response to the Plaintiffs' Motion, and in that response argues that the disclosure of the Disputed Email was inadvertent, is not the same thing as saying that the Defendant promptly took reasonable steps to rectify the error upon learning of it. A fair reading of Fed. R. Evid. 502(b)(3) requires that the party asserting the privilege promptly take some action, whether verbal or written, either to retrieve the inadvertently disclosed communication or demand that it be destroyed. The rule puts the burden on the holder of the privilege to be the actor, in other words, the party that is required to take the steps. It is not sufficient for this rule that the holder of the privilege simply react by opposing a discovery motion later filed by an adverse party in the lawsuit. Something more has to be done affirmatively to constitute the taking of reasonable steps to rectify the error of an inadvertent disclosure.

It is true that the Defendant had only a relatively short time period after first learning of the inadvertent disclosure of the Disputed Email before the Plaintiffs filed the Plaintiffs' Motion.

However, in the context of this case, with the disclosure error having been made several months earlier on October 4, 2010, with discovery scheduled to expire on February 28, 2011, and with the Plaintiffs having not only called the Defendant, but also having written a letter on February 10, 2011 and an email on February 14, 2011 to alert the Defendant to the problem, it was incumbent upon the Defendant to promptly take *some* action in order to meet the requirement of Fed. R. Evid. 502(b)(3). By taking no action to rectify the inadvertent disclosure of the Disputed Email, the Defendant cannot be said to have promptly taken "reasonable steps to rectify the error," even though the time frame in this case is relatively short. In sum, the Court is persuaded that the Disputed Email was inadvertently disclosed, even though the Defendant took reasonable steps to prevent disclosure, but the Defendant failed to promptly take reasonable steps to rectify the error upon learning of it. Therefore, the Defendant's disclosure of the Disputed Email operates as a waiver of the attorney-client privilege, and the Court will grant the Plaintiffs' Motion. Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiffs' Motion is granted and the Defendant's assertion of the attorney-client privilege with respect to the Disputed Email is overruled.

.

**Signed on March 17, 2011**

                                               **/s/ Phillip J. Shefferly**
                                               **Phillip J. Shefferly**
                                               **United States Bankruptcy Judge**